IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

No. 3:16-cr-00303-HZ
No. 3:18-cv-1495-HZ

v.

**ORDER**

JOSE ANTONIO MEJIA,

    Defendant.

_____

**HERNANDEZ, J.**

Defendant Jose Antonio Mejia moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, claiming that he received ineffective assistance of counsel from his trial attorney. I deny Defendant's motion.

## BACKGROUND

In July 2016, Defendant was charged with one count of aggravated sexual abuse, in violation of 18 U.S.C. § 2241(c), and one count of knowingly transporting a minor across state lines with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(c). Thomas J. Hester, an attorney with the Federal Public Defender, was appointed to

represent Defendant.

**I. The Plea Agreement**

In April 2017, Defendant accepted the government's plea offer. Plea Agreement, ECF No. 56-3. Defendant agreed to plead guilty to the charge of transportation with intent to engage in illicit sexual conduct, which carries a mandatory minimum sentence of ten years' imprisonment, a maximum sentence of life imprisonment, a maximum fine of $250,000, and a minimum term of supervised release of five years with a maximum of lifetime supervised release. Plea Agreement ¶ 3. Defendant would be required to register as a sex offender. The government agreed that at sentencing, it would move to dismiss the charge of aggravated sexual abuse, which carried a mandatory minimum sentence of thirty years' imprisonment. Plea Agreement ¶ 5. Defendant agreed that his relevant conduct under the Sentencing Guidelines resulted in an adjusted offense level of 40. Plea Agreement ¶ 7. The government agreed that it would recommend a three-level reduction at sentencing if Defendant demonstrated full acceptance of responsibility. Plea Agreement ¶ 8. The government also agreed that if Defendant showed acceptance of responsibility, it would move for a two-level downward variance for early disposition, and recommend a sentence of 240 months' imprisonment. Plea Agreement ¶ 9 A. The Plea Agreement allowed Defendant to seek additional departures or variances from the guideline range, which the government could oppose. Plea Agreement ¶ 9 B.

Defendant agreed to waive his right to appeal unless the sentence imposed exceeded the statutory maximum; the court applied an upward departure in calculating the sentencing guideline range; or the court imposed a sentence that exceeded the sentencing guideline

range. Plea Agreement ¶ 10. Defendant also waived the right to challenge the sentence collaterally, including through a motion under § 2255, unless Defendant's challenge was based on ineffective assistance of counsel.

The Plea Agreement noted that the court was not bound to accept the sentencing recommendations of the parties or the presentence report writer. Plea Agreement ¶ 11. Defendant would not be allowed to withdraw his plea or rescind the Plea Agreement if the court did not follow the Plea Agreement.

## II. The Change of Plea Hearing

On April 19, 2017, Judge Anna J. Brown presided over Defendant's change of plea proceeding. *See* ECF No. 56-2 (Plea Tr.). Judge Brown carefully reviewed the terms of the Plea Agreement with Defendant in open court. Judge Brown told Defendant that before she accepted the Plea Agreement, she needed to determine whether Defendant was thinking clearly, acting voluntarily, and understood the rights he was waiving and the consequences of the Plea Agreement. Plea Tr. 6. Judge Brown stated, "I need to be sure you know what could happen to you," "that this is your decision to go forward," and that Defendant had "actually committed the crime." Plea Tr. 6. Judge Brown also told Defendant, "I need to be sure, from your perspective, you feel you've had enough time with Mr. Hester to consider the seriousness of what all you've been facing, the options available to you under law [,] [the] rights you have, including your right to have a trial if you wanted to investigation [*sic*] that you might want him to pursue[,] [l]egal arguments that you might want him to consider." Plea Tr. 8. Judge Brown asked, "do you think you've had enough time with Mr. Hester to talk about those kinds of issues?" Plea Tr. 8. Defendant, who was under oath,

responded, "Yes, I have." Plea Tr. 8.

Defendant stated that he had met "many times" with Hester, and that Hester had answered all of Defendant's questions about the case. Plea Tr. 9. Defendant stated that he was satisfied with Hester's advice and services. Defendant stated that he personally believed that pleading guilty under the Plea Agreement was in his best interest. Defendant denied that he had been pressured to plead guilty against his wishes, or that anyone had promised him anything in exchange for pleading guilty that was not included in the Plea Agreement or the plea petition. Defendant stated that it was his personal and voluntary decision to plead guilty, and he was thinking clearly and not suffering from any physical, mental, or emotional condition that might interfere with his ability to make a good decision. Plea Tr. 10.

Judge Brown explained the consequences of the guilty plea. She stated that a guilty plea was "a permanent decision. It has the same force as if a jury found you guilty. It's not something you can go back and think about and say, 'You know, I want to change my mind. I want to withdraw my guilty plea.' That's just not how it works." Plea Tr. 15. Defendant stated that he understood and wanted to proceed with the change of plea.

Judge Brown stated that under the Plea Agreement, Defendant would be subject to a ten-year mandatory minimum sentence. She noted that the government had agreed to recommend a sentence of 240 months. Judge Brown stated that she had a duty to impose a reasonable sentence, one that would deter Defendant and others from committing similar crimes, but also accounted for Defendant's personal background. "[T]he whole sentencing process is trying to come up with what's enough but not too much." Plea Tr. 17. Defendant

stated that he understood.

Judge Brown explained that at sentencing, she would resolve any disputes between the government and Defendant. Defendant stated that he understood that the court was not bound by the Plea Agreement. Judge Brown told Defendant, "I can't make you any promise today about what's going to happen, so there is some risk in the sense that you're making a permanent decision without knowing what the outcome is going to be. Do you understand that?" Plea Tr. 19. Defendant responded, "Uhm." Defendant then conferred with Hester. After conferring with Defendant, Hester stated, "The judge -- she's informing you she's not bound by anything. That's not a contract with her. So what's open to her is anything from the ten-year to a life sentence." Plea Tr. 19. Judge Brown told Defendant, "I can't tell you it's going to be 120 months. I can't tell you it's going to be 240 months. I can't tell you it's going to be 30 years. I can't because . . . I won't know until all of this other process I just described [e.g., the submission of the presentence report] is finished." Plea Tr. 20. Judge Brown noted that under the Plea Agreement, Defendant would waive his right to appeal the sentence unless the court increased the guideline range or imposed an illegal sentence.

Defendant then stated that he had read and understood all the provisions of the Plea Agreement. Defendant adhered to his statement in the Plea Agreement that he was in fact guilty.

The assistant U.S. attorney (AUSA), Ravi Sinha, described the evidence of Defendant's guilt. Then Defendant stated that he had knowingly arranged for his two nieces, who were eleven and thirteen, to travel with him by train from Oregon to Washington. However, when Judge Brown asked Defendant whether the trip to Seattle with

his nieces "was for the purpose that either of them would engage in sexual activity -- illegal sexual activity," Defendant replied, "No." Plea Tr. 27. Judge Brown then stated, "Well, then you may not have committed the crime." Plea Tr. 27. After Defendant had conferred with Hester, Judge Brown again asked Defendant, "So the question is, when you knowingly transported your nieces from Oregon into Washington, nieces you knew were not yet the age of 18, did you do that with the intent that one of them engage in sexual activity -- criminal sexual activity?" Plea Tr. 27. Defendant replied, "Yes."

Judge Brown then found that Defendant was competent to make a knowing, intelligent, and voluntary waiver of his rights. She also found that Defendant's plea of guilty was knowing, intelligent, and voluntary, and there was a "factual basis for a finding of guilt." Plea Tr. 28.

**III. Sentencing**

On October 19, 2017, Judge Brown sentenced Defendant. ECF No. 56-1 (Sentencing Tr.). At sentencing, AUSA Sinha stated that the government and Probation recommended a sentence of 240 months' incarceration, followed by fifteen years' supervised release and a lifetime of sex offender registration. Sinha then described the government's reasons for seeking the 240 month sentence, based on the nature of Defendant's conduct and his relationship with the victim. Sinha stated that the government's recommendation was lower than the sentencing guideline range because Defendant's guilty plea meant that the victim and her sister would not need to testify.

Defendant's attorney Hester argued that Defendant's Criminal History Category of V overstated the seriousness of his prior convictions, which were related to his alcoholism.

Hester argued that Category II or III would be more appropriate.

Hester also argued that the offense level overstated the seriousness of the crime. The sentencing guidelines added eight levels because the victim was under the age of 12, although she would have turned 12 in 90 days. Hester argued that the court should consider Defendant's criminal conduct to be aberrant, stating that Defendant did not recall the incident because he had been drinking heavily. Hester also argued that typical interstate sex trafficking cases usually involve the defendant "traveling specifically to meet . . . a child." Sentencing Tr. 19. Hester also distinguished the federal prosecutions cited by the government, noting that 14 of the 15 cases cited were for production of child pornography. Hester urged the court to impose the 120-month mandatory minimum sentence.

Defendant's sister, the victim's mother, testified. Hester noted that the sister had pleaded guilty in April 2017 to criminally mistreating one of her daughters.

After receiving evidence and hearing argument, Judge Brown discussed her findings. She concluded that Defendant's conduct required planning and deliberation. "This is a person who calculated to take two young girls away from their patents, out of state, to a motel. So there was nothing accidental or aberrational about the decisions [Defendant] made to put him in the position of really entrapping the children and then victimizing . . . the younger of the two." Sentencing Tr. 26.

Judge Brown agreed with Hester that the Criminal History Category, although correctly calculated, overstated the seriousness of Defendant's criminal history. Judge Brown found that Criminal History Category IV was more appropriate. With an offense level of 37, the guideline range was 292 to 365 months. Judge Brown then varied

downward to an offense level of 32, and imposed a sentence of 180 months' imprisonment. Judge Brown noted that the two nieces would be "in their mid-20s when [Defendant] is out of prison." Sentencing Tr. 31. At Hester's request, Judge Brown clarified that she was setting the offense level at 32.

### IV. Defendant's Motion Under 28 U.S.C. § 2255

Defendant filed the current motion under 28 U.S.C. § 2255 on August 20, 2018. Defendant raises three grounds for relief: (1) Hester "didn't tell me I could appeal" and gave inaccurate advice; (2) Hester failed to investigate the case properly, creating a *Brady*[1] violation; and (3) Hester coerced him to plead guilty, and although Defendant "was promised 10-12 year[s]," "Court gave me 180 months, 5 years more [than] what my lawyer had me sign." Def.'s Mot. 7, ECF No. 47, at 6.

## LEGAL STANDARDS

A prisoner serving a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. When there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

Under § 2255, a district court must grant a hearing "unless the motion and the files and the record of the case conclusively show that the prisoner is entitled to no relief." *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003). "The standard essentially is

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citations and quotation marks omitted). The court may decline to hold an evidentiary hearing if the claim is "so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004) (citations and quotation marks omitted). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Id.* at 879 (addressing allegations that a defendant was incompetent because of drug use when he pleaded guilty).

## DISCUSSION

### I. Ineffective Assistance of Counsel

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel." *United States v. Walter-Eze*, 869 F.3d 891, 900 (9th Cir. 2017). To establish ineffective assistance of counsel, a defendant must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Courts should indulge a strong presumption that the lawyer's performance falls within the "wide range of reasonable professional assistance." *Id.* at 689. The defendant also must show that he was prejudiced by counsel's performance by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The defendant has the burden of showing actual prejudice. *Walter-Eze*, 869 F.3d at 906.

In an ineffective assistance claim based on a guilty plea, to establish prejudice the defendant must show "'a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial.'" *Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir.2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Howard*, 381 F.3d at 882 ("To satisfy *Strickland*'s prejudice prong, Howard must allege that but for counsel's errors, he would either have gone to trial or received a better plea bargain."). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative choices of action open to the defendant." *Hill*, 474 U.S. at 56 (citation and quotation marks omitted).

## II. Discussion

Defendant contends that Hester (1) did not tell him that he could appeal, and gave inaccurate advice; (2) failed to investigate the case properly, creating a *Brady* violation; and (3) coerced him to plead guilty, and although Defendant was promised a sentence of ten to twelve years, Judge Brown imposed a fifteen-year sentence.

Defendant's sworn statements at the change of plea hearing contradict his claims here. A defendant's "statements at the plea colloquy carry a strong presumption of truth." *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012); *United States v. Morrison*, 113 F.3d 1020, 1021 (9th Cir. 1997) ("Any attempt to contradict the factual basis of a valid plea must fail."). As the Supreme Court explained, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

As to Hester's representation of him, Defendant testified under oath that he met with Hester many times to discuss the case and the proposed Plea Agreement; Hester answered all of Defendant's questions about the case; and he was satisfied with Hester's

representation. I note that at sentencing, Hester stated that he had more than twenty years' of experience representing criminal defendants in federal court. Sentencing Tr. 21.

As to Defendant's assertion that he was not told about his right to appeal, during the plea hearing Judge Brown carefully explained the terms of the Plea Agreement, including the provision allowing Defendant to appeal the sentence only if the court increased the guideline range on its own or imposed an illegal sentence. At the plea hearing, Defendant stated that he understood the limits on his right to appeal. Plea Tr. 20. Furthermore, Defendant stated under oath that he had read the entire Plea Agreement and understood everything in it, including his waiver of his rights to appeal. Plea Tr. 21. Defendant also stated that he understood that pleading guilty would have permanent consequences, and that he could not later withdraw his plea. Plea Tr. 15.

Although Defendant now claims Hester coerced him into pleading guilty, Defendant stated under oath at the change of plea hearing that he was not under any pressure to plead guilty and that there had been no interference with his ability to make a good decision. Plea Tr. 10. Defendant also claims now he was promised a sentence of ten to twelve years' incarceration, but Judge Brown emphasized during the plea hearing that she could impose any reasonable sentence depending on her evaluation of the case. Defendant stated at the plea hearing that he understood the risk of pleading guilty without knowing the ultimate outcome. Plea Tr. 19. Hester stated at the plea hearing that Judge Brown's sentence could range between the ten-year mandatory minimum sentence and a life sentence. Plea Tr. 19.

Defendant was notified multiple times during the plea proceeding by Hester and Judge Brown that the sentence would be set by the court. There was no basis for him to

believe he would receive the mandatory minimum sentence. The sentence he did receive was within the range discussed at the plea hearing. Nor has Defendant presented evidence, other than his own conclusory allegation, that he was ever promised a shorter sentence than he received. I conclude that Defendant has not overcome the presumption that his statements under oath at the plea proceeding were true. *See United States v. Rivera-Ramerez*, 715 F.2d 453, 458 (9th Cir.1983) (denying ineffective assistance of counsel claim because it was contradicted by the defendant's statement in court that he was satisfied with the representation he received).

Defendant also contends that Hester failed to investigate the case properly. Defendant cites *Brady*, which addresses the government's failure to disclose potentially exculpatory evidence to a criminal defendant. However, here Defendant has not alleged that the government failed to disclose material evidence. *See, e.g.*, *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002) (describing the elements of a *Brady* claim). Construing this claim as an additional assertion of ineffective assistance of counsel, I conclude that Defendant has not presented evidence that Hester failed to properly investigate his case. Hester zealously represented Defendant throughout the proceedings. During plea negotiations, the government agreed to dismiss the first count of the indictment, which carried a thirty-year mandatory minimum sentence. At sentencing, Hester persuaded Judge Brown to lower Defendant's Criminal History Category from V to IV. Hester also elicited evidence concerning the credibility of the victim's mother, and other relevant facts. Hester argued strongly for the ten-year mandatory minimum, and Judge Brown ultimately imposed a sentence halfway between the government's suggested twenty-year sentence and the ten-

year sentence. I conclude that Hester competently represented Defendant throughout the proceedings. Based on the record, I conclude that Defendant has failed to show he received ineffective assistance of counsel.

I also conclude that Defendant has failed to show actual prejudice. He has not presented evidence "that but for counsel's errors, he would either have gone to trial or received a better plea bargain." *Howard*, 381 F.3d at 882.

### III. No Evidentiary Hearing Is Necessary

I conclude that Defendant has not shown the need for an evidentiary hearing on his claims. The district court may deny an evidentiary hearing based on "a record which included transcripts of the plea and sentence hearings" as well as other documents in the record. *Shah v. United States*, 878 F.3d 1156, 1160 (9th Cir. 1989). Because the record refutes Defendant's allegations in the § 2255 motion, Defendant is not entitled to an evidentiary hearing. *See id.* at 1159.

### CONCLUSION

Defendant's Motion to Vacate, Set Aside, or Correct Sentence, ECF No. 47, is DENIED. Because Defendant has not made a substantial showing of the denial of a constitutional right, the Court DECLINES to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 11th day of December, 2018.

MARCO A. HERNANDEZ
United States District Judge